Orange County Water District versus Texaco Refining. Good morning, your honors. May it please the court. My name is Michael Axelheim. I'm appearing today on behalf of the Orange County Water District. I'd like to start with the race judicata issue, with your permission, and make three points that are, I think, going to emphasize. I want to be sure I understand the background of this controversy. As I understand it, as a consequence of the earlier suit, this is the district attorney suit, the discharge of MBTEAs has ceased. The affected areas have been remediated? That's actually not the case, your honor. They have not been remediated. And- In the process of being remediated, and is remediation required by the California Consent Decree? Not complete remediation, your honor, and this is an important point. In California, remediation is overseen by a number of agencies. The DA is not one of them, typically. The DA prosecutes criminal cases. Here, the DA decided to take it upon himself to bring a public nuisance action, which he's permitted to do under Section 731 of the Code of Civil Procedure. But what the district attorney is not empowered to do is to enforce any private rights and to usurp the responsibilities of the agencies that are responsible for remediation, such as the California Regional Water Quality Control Board. And for off-site impacts, the Orange County Water District. That doesn't really answer the question, though. The settlement does refer to remediation obligations. So we'd like to understand what remediation obligations are covered by that settlement, and what you think is not covered by that settlement. So, and to complete my answer to the question about whether this has been remediated, it is not. Shell and BP did not put on any evidence, because they have no evidence, that the off-site migration of MTBE at the 400 plus sites that are in Orange County has been remediated. That MTBE- So it's your position that the consent decree was inadequate? Not at all. It's our position that it was limited, and that it did not involve the Orange County Water District or the rights of the Orange County Water District. It didn't purport- I'm not asking you about that, I'm asking you about the, what I'm concerned about is whether there are these chemicals, this MBTE that is leachated out that needs to be remediated, but is not being done under the auspices of the consent decree. That is absolutely the case, your honor. It's uncontested that MTBE continues to migrate from hundreds of stations throughout the district. It has not been remediated pursuant to the consent decree, and the consent decree did not require that it be remediated. It required only that Shell and BP comply with the directions of the regional water quality control boards, which are responsible for on-site remediation, and that they spend some money to look at the extent of the contamination. They say that the district attorney got a blank check, and you're not going to find that in any of the consent decrees. And in fact, outside of this courtroom, BP and Shell would never make that statement. That was a statement made by the district attorney promoting his own efforts to protect the public. What's going to happen, this case is going to California, regardless of whether race judicata is affirmed or reversed, is that right? Correct, the other defendants are now- So what's going to happen, and what's scheduled to happen in California? Right now, the district court who has the remanded defendants has scheduled them to be tried one at a time. And the first up will be Exxon, there will be a three week trial on the two Exxon stations that are the subject of focus case discovery. So if this case gets sent back, it will get put in line, Shell and BP will get put in line with the other defendants who are- Your client is the plaintiff in that case? Yes, yes. No, I just wanted to be sure I understood that correctly. Absolutely, it's all one case, lots of defendants, lots of sites, none of which have been fully remediated, Your Honors. That's a case with a different defendant and a different site, but the same kind of problem, am I right? Yes, and same case. This deal, I understand that, but this deals with a different site. It was also the site that the district attorney sued about, right? No question, the district attorney sued over these sites. And you're claiming you've got separate rights and interests? Yes, and that was the first point I wanted to make about the district. And that is that the district spends hundreds of millions of dollars and has spent years to get water that's sufficient to meet the needs of 2 million people in Southern California for clean, potable water. It has had to go through a lengthy process with the state to perfect its rights to that water. It has superior legal rights to that water, and nobody can take that groundwater out of the aquifer without paying the district a replenishment fee. Let me ask you this on the Rice-Judicata point. What was the district attorney suing about with respect to that water at that site? That's different from what you're suing about. Because, I mean, I understand that the water has been contaminated and different state entities might be the party to sue. The district attorney sued. Why is your suit different? It's different because there are multiple rights in that water, and there are multiple types of rights. There are public rights and there are private rights in the same water, and that's not at all unusual. Do you agree that the district attorney sued about, covered all public rights? All public rights? I don't have an answer to that question, Your Honor, because there may be other public rights beyond what the district attorney asserted. Vis-a-vis your client, is your client suing only for private rights? Yes. Okay, so we can start with that. What is the private right, and what is its source? Because I would have thought that it was the rights of the people of the county, and that that was covered by the district attorney's suit. Help me understand why not. Your Honor, if that was the case, then anybody could take water without having to pay a replenishment fee to the district. And the district would be crazy to invest hundreds of millions of dollars in putting that water- Well, I don't understand how the district attorney could sue it all then, if the right to that water was exclusively the county's. But you're not disputing that the district attorney had the right to sue. No, I'm not, but the right to sue- If I can give you an example of how you can have both a public right and a private right, because it's set forth in the case that Judge Shindlin cited, and that the defendants primarily rely on. It is the Coast case. And here you have another instance of where there are both private and public rights in an easement to beach access. Although they rely on this case, they don't quote the following from the case, and I think it's critical for race judicata purposes. In that Coast case, the court said, the appellant has not pursued individual claims applicable only to its members in some way distinctive from the property rights of the public adjudicated in the pre-existing case as necessary to avoid the preclusive effects of race judicata. There you had both a private and a public interest in access to the beach. I don't think that's distinct. Here, as you say, you have the right to take the water, but you take it for the same public that the district attorney was suing on behalf of, or am I missing something? Well, I wouldn't say you're missing something, Your Honor. I just think that the nature of water rights is that you can have multiple rights in the same water. Now, what the district attorney did not have and could not pursue was the rights that the district has in the water that's in the ground. So the public has a general- Your right is you're saying you have an exclusive right to take that water, then nobody has any other rights. And I don't understand that. Everybody has a general public right, Your Honor, to clean water in California, but that doesn't mean that's the end of the story. How that gets carved up and who has the right to enforce different aspects of those rights is a very complicated question. What's not complicated is that the district has perfected a very specific right to that water. It's harmed differently from how the public in the district attorney's case was harmed, because that is a difference in the easement case that I understand. Here, it's that the public at large has a right to clean water, and you, who are going to take the water and get it to the public, have a right to clean water. That seems to me to be the same. It is different, Your Honor. The public has a very generalized, precatory right to clean water. How that water gets to them is a matter of very complicated state law. What the district has, and what the DA did not have, was an investment of hundreds of millions of dollars in putting that water in the ground, managing it. The district's employees spend 24-7 trying to figure out how to get good, clean water to more than 2 million people at the right pressure, hand in hand. The problem with this line of argument you're pursuing, it seems to me, and correct me if I'm wrong, is that it just runs you headlong into the statute of limitations. Because your theory now is that you had a completely different constellation of interest to protect than the district attorney did. You weren't permitted to intervene. You knew about the contamination at least as of 1999, and you sat around and let the three year statute run. Actually, Your Honor, the statute of limitations doesn't begin to run in California until you have a legal cause of action. The problem with Judge Schindler's rulings below is that she said two contradictory things. We said, look, we protect the- I am nonplussed as to why you didn't have a mature claim at least as the point of time when the DA sued. It's this, Your Honor. It's the difference between on-site and off-site contamination. There's a lot of contamination that occurs at gas stations that gets remediated by the Regional Water Quality Control Board. They're taking care of that problem. It never gets off-site. It never threatens drinking water. It never threatens to get to any public drinking water wells. When that's the case, the district can't bring a cause of action. That's what Judge Schindler found in one opinion. And then on the statute of limitations opinion, she said, well, you were obligated to bring that same cause of action that I have said elsewhere you couldn't bring the minute MTBE reached 5 ppb. Well, one of the two is wrong. I'm focusing on the second. But what is wrong with the second? The thing that's wrong with the second is the statute can't run until you have a cause of action. And it is your point that the cause of action doesn't arise until the MBTE gets off the, we'll call it the gas station site, starts migrating, and finally hits your water. Then you have a cause of action. Yeah, yeah, there's a fair amount of water. You don't have an anticipatory, well, I guess it's not a breach because you don't have a contract, but you know it's coming, but you can't sue on it until it gets there? We're not allowed to speculate about harm. But your gas stations were sitting on this, the gas stations you're suing were sitting on this water table, right? They're sitting on a water table. That doesn't mean that the MTBE that's in the shallow water just underneath the gas station is ever going to go anywhere. It doesn't get there. We can't sue on speculation that the remediation isn't going to work. But the district attorney's suit has required millions and millions of dollars to clean up this migrating chemical, and it's your position that you were as surprised as anyone when you read the consent decree and found out that it was migrating? The consent decree doesn't say that it's migrating, Your Honor. But they had to clean it up, right? What the district attorney did was basically back up the regional water quality control boards that are responsible for on-site remediation, threatened some civil penalties, and got some additional money. So at some of these sites, if they're not doing an adequate on-site remediation job, the district attorney got some additional bucks to help out with that, and that's it. That did not take care of the off-site migration of MTBE, which under our continuing nuisance claim, we have a new cause of action for every day that it is in the water and continues to migrate away from the station. Some of these plumes are thousands of feet long. In any event, is this a jury issue? If the facts are presented to the jury, the jury is going to deal with this question? I very much think it's a jury issue, Your Honor. That's right, and in fact, when it came to the district's cause of action, Judge Schindler, and we believe improperly, drew an inference. We explained this whole difference between on-site and off-site migration to her. And she said, well, but you're saying that if it gets up to five parts per billion in an off-site monitoring well, that is sufficient evidence of harm that you can bring your cause of action. But I'm going to draw an inference that you're also harmed on-site. That is a jury question. The city of Pomona case, with respect to the statute of limitations, made that- On-site, meaning at the gas station. Meaning at the, yeah, yeah, sorry. Yeah, sorry, at the gas station, where, unless it moves off, it's not going to cause any harm, so. I hope I've answered your questions. My time is up. Thank you. Thank you, Your Honor. My name is Peter Condren. I represent the Shell Defendants, which are Shell Oil Company, Equilon Enterprises, and Texaco Refining and Marketing. I'm also presenting argument today on behalf of the BP entities as well. That's Atlantic Ridge Field, BP West Coast Products, and BP North America, Inc. Your Honor, what this case boils down to is whether or not a consent decree of which the Orange County Water District was well aware, that was entered into between BP in 2002 and Shell in 2005, covered the exact same cause of action, subject matter, and issues that were at issue in the claim that OCWD has filed in this case. Let me just address something at the outset that Mr. Axelheim was talking about, which deals with this false dichotomy of on-site and off-site cleanup. It is simply not the case that the district attorney's lawsuit got the water board some extra bucks to clean up on-site contamination. I'm going to quote from you, or to you, from the record, and this is in the appendix, and I'm quoting from page A-4391. It's the cleanup obligation that's contained in the Shell consent decree. And I'm quoting from that, it says, specifically, that the Shell defendants are obligated to commence and complete all appropriate corrective and or remedial action to clean up any petroleum hydrogen compound contamination or other contamination to soil or groundwater, whether on or off the subject sites. So the notion that we were able to just stop at the gas station border and not clean up anything else, and that this consent decree doesn't cover anything other than contamination at the gas station itself, simply isn't correct. It's not the case. The consent decrees were broad, they provided broad relief, and they covered exactly the claims that OCWD is asserting here. Are these remediation efforts ongoing? They are, Your Honor. Is the Water District also expending money trying to stop this stuff from getting to the water? That seems to be a source of some dispute. Our position is no. It's like a jury issue to me. So the answer is yes or no? The answer is no. Judge Shinlin found that, in fact, they are not expending- He found on summary judgment? Correct, in a different motion, that they were not expending money that's recoverable under the Orange County Water District Act, which is what they were suing us under for those costs. The district has indicated that it's done some amount of investigation, but it is not actually cleaning up any groundwater in Orange County today, 13 years later. Under the statute, under subsection A, the investigation costs are not recoverable. That's correct, they are not recoverable under subsection C, Your Honor, but they relate back to subsection A, you're correct. What's your position on their argument that there's continuing violations, so that even with the settlement, they've got a claim for whatever is continuing? Well, there's a couple of answers to that, Your Honor. First off, if you look at the consent judgments in both the case of BP and Shell, they are clearly directed towards making sure that all claims that were or could have been asserted in the DA suit were resolved. And in fact, one of the things that Judge Shindlen found, and she's quite right about this, is that the consent judgments provided for the cleanup of the contamination in the ground, and we are continuing to do that in some instances. In some instances, the cleanups have been completed. You've got a five year period to do that, right? Well, the five year period relates to certain injunctive relief that's contained in the Shell consent decree. That five year period doesn't relate necessarily to the cleanup. That's not bound by time. And we are continuing to do cleanup at our stations in Orange County to the extent it's necessary. So you think you're subject to that being totally clean to the satisfaction of whomever, otherwise you'll be in court again? Correct. We are obligated under California law to clean up and remediate stations for which we're the responsible party. You're talking about stations. Correct. But stations that, the fact that the station may have a release, Your Honor, doesn't mean that we're allowed to stop at the station border. If the contamination continues beyond the station border, we're obligated to clean that up. There's no question. Yes, we are. Through deep water wells, I mean, or- We are checking it. It depends on the site, Your Honor. There's certain spots where we're cleaning up, or we're monitoring at certain levels, and it depends on the hydrogeology of the site. I understand that. Any dispute over whether you're adequately monitoring it? The Orange County Water District might dispute it. We have not had a single dispute raised by the district attorney under the consent order. There's a- The district attorney's job isn't to go out and clean up water. It's not necessarily to clean up water, Your Honor, but it is to enforce the consent decree. And in fact, in connection with this consent decree, Shell and BP were both required to fund an environmental consultant who was going to be selected by the district attorney's office who would monitor what we were doing in Orange County as a result of this consent decree. Has that been done? Yes. Further, Your Honor, the dichotomy that Mr. Axelhein tries to make between public and private rights, I think, is also a false one. The Orange County Water District is a governmental unit. It's not suing here to enforce private rights. But it has a separate board. It has a separate budget. It has its own source of income that's not tax revenue dependent. Isn't that correct? No, that's not entirely correct. They actually do have property tax rights, which forms part of their budget. And they also have a user fee component to their budget as well. But they absolutely have a property tax as well in the Orange County Water District. There's no question about that. In addition, the district is a special district of the state of California. As a result of that, it's deemed to be an agency of the state. It says that in their, I don't believe this is in the record, but in their budgetary documents on their own website, they call themselves a special district of the state. And California law is quite clear that agencies of the same state, of the same government, are in privity with each other because they represent not their own rights, but the rights of the government. And I think the panel had it exactly correct. Orange County is an agency of the state? Orange County itself? Which elected the DA? It's a municipality, Your Honor. But- Is that an agency of the state? It is for this purpose because California law specifically allows the district attorney, and I'll cite to the statute, allows the district attorney to bring a public nuisance case in the name of the people of the state of California. And specifically, that's the government code section 26528. So yes, in this instance- We don't deal with the agencies of California as frequently as the agencies of the states in our own circuit, but this has all kinds of ramifications for the 11th Amendment, for who can be sued under 1983 and who cannot. I mean, you're likely saying they're agencies of the state and therefore in privity with one another. I mean, is there case law that says they are agencies of the state? Or are you just asking us to infer that from the fact that it sues in the name of the people of California? There's no specific case law that I've seen dealing with the Orange County Water District on this point. However, there are numerous cases in California. I would have thought your argument might have been more that they're in privity because they're both parts of Orange County, not necessarily the state, but am I missing something about how they're set up? Well, they're agents of the same government, whether it's Orange County or the state, Your Honor. It doesn't matter because what they're doing here is representing, as the panel pointed out, the rights of the public. And that's what makes them in privity. And as a result, we believe that under precedent in California, because they represent the rights of the same public, that they are in privity. And- Now at least part of the argument by counsel to the contrary was that only the water district has the right to the use of this water. And that that somehow gives them a private interest akin to the easement in the case on which they rely. Tell us why you don't think we should look at it that way. Well, for a couple of reasons. First off, under California law, it's very clear, and this is under the Water Code Section 102, that the water in the state of California belongs to the people of the state of California. Now, other people can take it by appropriation. And OCWD has suggested that it has a use of fructory right, which means a right of beneficial use, that they are allowed to take water and put it to beneficial use. OCWD doesn't actually do that, however. The water is appropriated by individual water districts within the Orange County Water District. Orange County Water District doesn't actually supply water to the public. They supply it to other water agencies who in turn supply it to the public. In connection with these motions- But those other agencies recognize that they have to get the water from the Orange County Water District. Correct, that's correct, Your Honor. So, they're the indirect supplier. Correct. But under the circumstances, there is a superior right in the people of the state of California in that water. That's the interest that was represented- Well, people in the state of California can't go in, throw a cup down the well, and say this is my water and I'm going to drink it. That's correct, but they- The entity to whom they supply the water to do that. That's correct. So, it's their water, which they can then sell to the people of California. They can't deny the people of California that, but they've got a right in that water, it seems to me, and tell me why I'm wrong, basically to get some remuneration for distributing it. They manage the basin, and they are entitled to charge- They manage, I'm sorry, I didn't- The water basin in Orange County. Manage the basin, okay, sorry, I didn't hear. And they are entitled to charge a user fee to the user districts that actually pump the water out of the ground and serve it to their customers. But they're not actually doing the pumping, and they're not actually appropriating the water themselves. They are charged, able to charge a fee for that. But they're not actually taking possession of the water, they're not appropriating the water themselves. What claims do they have that are not common law claims? Well, they have a public nuisance claim in their complaint, Your Honor. But that's actually based on a statute in California. It's basically, as I recall, there is a section on public nuisance and private nuisance that is contained. They have a public nuisance claim under that statute. They brought a products liability claim that, for the most part, Judge Shindlin determined was time barred. They brought a claim for trespass that the judge also determined was largely time barred. And they also have a statutory claim under, a negligence claim, excuse me, and then they also have a statutory claim under the Orange County Water District Act. And specifically for what? The claim under the Orange County Water District Act is to recover costs. But as Judge Shindlin found in connection with the summary judgment motion on that issue, they hadn't incurred any recoverable costs under the Orange County Water District Act. So why isn't the statute of limitations, at least through the reasonableness prong, a jury question? We believe it's not a jury question for a couple of reasons. First off, Your Honor, in this particular instance, they rely heavily on the city of Pomona case saying that it's a reasonable question. In the city of Pomona case, there wasn't a specific, what they call maximum contaminant level, a level at which the contamination violates the law, until after the contamination had been discovered. All parties in that case agree that once the contamination reached the maximum contaminant level that had been put in place by the California legislature subsequently, that that was sufficient to run the statute of limitations. Here it's not a reasonableness question because they were aware that there was MTBE in the groundwater at levels exceeding the MCL in California more than three years before they filed suit. And that is sufficient under California law as harm to start the clock running on the injury. And therefore, as a result of that, they were required to bring suit. They didn't- If the statute had run, what would be left? If the statute had run, there would arguably be some claims for continuing nuisance in the case, and to the extent they had any recoverable cost, because the statute of limitations wouldn't cover the Orange County Water District Act claim. Certain claims under that, if they were able to state them, would theoretically be not barred by the statute of limitations. What are we to make of the different language in the second consent judgment that says that the claims of the water district are not covered by the party's agreement? Well, Your Honor, two things on that. Number one, the language in the consent judgment, and this is the Shell consent judgment, specifically states, and the reason, that the only thing that was in that agreement in terms of the water district's claims was a statement that the parties understood that the district attorney was taking the position that he wasn't representing the water district. That language was very, very intentional, and the reason is because we didn't agree with that.  And these claims were being asserted on behalf of the public. Now, as Judge Shindlin also pointed out, the consent judgment does have a number of exclusions from it, places where we agreed to carve out certain claims from the scope of the consent judgment, and when that happened, that was done very clearly. And for example, I can turn your attention to paragraph 9.0, where certain claims are carved out that were being asserted against Texaco, Inc., for example. The other issue there, Your Honor- Was privity resolved in this case? If there is privity, you win. If there isn't, you lose. We believe so. Not as to the continuing violation, though we would still have to deal with that separately. Because they're saying that's injury that occurs after the consent judgment. I'm not suggesting that they would be successful, but it's a separate issue, isn't it? That is a separate issue, and if I could just address that briefly, Your Honor. Two things. Number one, the consent judgment's provided for future work to be done to clean up contamination. Also, California law provides that where a claim is brought for permanent nuisance and it's settled, that there is no further continuing nuisance claim. In addition, where the consent judgment that resolves the claims contains an injunctive component to it, that the injunctive component, because it's assumed that the remediation will take care of the harm, the injunctive component means that no further continuing nuisance claims can be brought as well. Thank you very much. Thank you, Your Honor. Your Honor, is Mr. Condren is correct when he says that privity is a matter of law in California, but you have to understand the facts that underlie the case in order to apply the law. And the burden is on the defendants to establish that res judicata applies here. It is uncontested that the district was not a party to the DA's lawsuit. And as Mr. Condren admitted, the DA said that he was not purporting to bring the case on behalf of the district. He did that for- In the Shell case. In the Shell case, but also- Not in BP. No, in the BP case as well. Now, they didn't specify the Orange County Water District, but they said generally, we're not acting on behalf of water districts here because they knew the political heat they would get if they purported to take over the claims for water districts. The critical thing is whether the harm or the injury is the same. And I still am perplexed as to what injury the DA could possibly have been suing about that is other than the injury that the water district is suing about. I think, Your Honor, to help understand this, I would refer you to Judge Shinlin's opinion on primary jurisdiction in the case because she explains the role of the various agencies in California when it- I don't get it. That just continues to confuse us. Judge Radji's question to you was a straightforward one. What is the difference in the harm? Now, please answer that question and then you can riff on it if you think that would be helpful. Yes, certainly. The difference in the harm is that the district is losing its investment, its private sector investment of hundreds of millions of dollars, and the DA is not- That's just talk. What Mr. Condon said was that under the consent decree, there's a continuing obligation to clean up these plumes. It's ongoing. The fact of whether it is happening is under the subject of a separate professional geologist. Your Honor, that geologist was allocated, I think, maybe $5 million, and that's it, to go out and do some perfunctory checking. What's the harm that you are seeking to redress? If they clean up- Let's assume they do everything they promised to do, which is to stop permitting this substance to get into the water, clean it up both on-site and off-site, and not do it again. The harm, and this is a very real harm because it's happening today, Your Honor, and it's why we're here, is that they're not doing that. The contamination is continuing to threaten public drinking water wells. Mr. Condon keeps referring to their obligation. Is that a complaint that their cleanup really isn't effective? Because I'm going to tell you very simplistically. I look at this case and I see the district attorney for Orange County. So he's representing Orange County or the people of Orange County. I see the water district for Orange County. It's representing the people of Orange County. I see a claim that MDPE was leaking from these tanks and then leaching into the soil and the water and going on. That's what the district attorney sued to remedy. That's what you're suing to remedy, complaining that the district attorney didn't do a good enough job. And I understand the frustration with that, but I don't see how the parties or the harm are different. You are both the agents of the people of Orange County. I'm glad you mentioned that. I heard you ask Mr. Conron that, Your Honor, and Mr. Conron was not entirely accurate in his response because the Orange County Water District is a completely different agent. It has nothing to do with the county of Orange. It has nothing to do with the county of Orange. It doesn't even overlap in jurisdictions. It doesn't have the same electors. It doesn't have anything to do with the county of Orange? Correct. It just uses its name? That's correct. That is the only similarity, Your Honor. It is a completely separate entity. No public entity exists in and of itself. It represents the public. What public do you represent? We represent the water producers who have to supply water to the cities, most of which are in Orange County, but some of which are outside of Orange County. The fact that... You don't represent the people. You represent private entities. Is that what you're telling us? I represent a quasi-governmental entity that is completely independent of the county of Orange and has nothing to do with that county. Do we have a copy in the record of your chartering instruments or a cite to them of the document that created you and says who you act on behalf of? Yes, Your Honor. It's in the special appendix. It's the last document in the special appendix. Thank you very much. You don't represent the people of Orange County? Not in the same way that the county government does. You represent them in the same way. Every public entity in New York, in New York City, represents the people in different ways. But my concern is you're the people of Orange County. The DA is the people of Orange County. What am I missing there? The Orange County Water District represents the water purveyors for whom it obtains and protects this water, and it is not a broad government entity. The only thing it does is manage the water base. That's the only thing it does. It doesn't act on behalf of the people of Orange County at all, and certainly not in any context other than obtaining and protecting this water. They manage it on behalf of the people within the Orange County Water District service area, which is different than Orange County. You know, if a private company labeled itself the Orange County Widget Company, that wouldn't make it a part of Orange County. That doesn't represent a subset of who the district attorney represented. I don't think that helps your privity argument. Well, there's not complete overlap, Your Honor. But if you're a subset, I would understand the flip being true. You had sued, and they represented a larger group. But all right. Anything else? Yes, I would just like to make the point that with respect to the cases that Mr. Conner relies on involving state, you know, whether just because you're both some subdivisions of the state, there's necessarily privity. The cases that he cites don't say that. The Coast case that I quoted to you from is the main case that they rely on for that proposition. They cite only three cases. Two of them are collateral estoppel cases. They're not race judicata cases. And that is not a general principle. If you look at the principles of privity, they apply to state agencies just like any other entity. And privity doesn't apply here because we were not a party, and none of the exceptions to holding somebody obligated under a prior case apply to the Orange County Water District. Thank you both.